IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LISA HINANO REY, | ) | CIVIL NO. 11-00142 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS COUNTRYWIDE |
| vs. | ) | HOME LOANS, INC. AND BAC |
| | ) | HOME LOANS SERVICING, LP'S |
| COUNTRYWIDE HOME LOANS, | ) | MOTION TO DISMISS |
| INC.; BANK OF AMERICA d/b/a BAC | ) | |
| HOME LOANS SERVICING, LP; | ) | |
| JOHN DOES 1-100; JANE ROES 1- | ) | |
| 100; DOE CORPORATIONS, | ) | |
| PARTNERSHIPS AND OTHER | ) | |
| ENTITIES 1-10 | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS COUNTRYWIDE HOME LOANS,
INC. AND BAC HOME LOANS SERVICING, LP'S MOTION TO DISMISS**

## I. INTRODUCTION

On March 7, 2011, Plaintiff Lisa Hinano Rey ("Plaintiff") filed this

action alleging claims against Defendants Countrywide Home Loans, Inc.

("Countrywide") and Bank of America d/b/a/ BAC Home Loans Servicing, LP

("BAC") (collectively, "Defendants"), for violations of the Truth in Lending Act

("TILA"), the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the Fair

Credit Reporting Act ("FCRA"), the Equal Credit Opportunity Act ("ECOA"), and

various state law claims stemming from a mortgage transaction concerning real

property located at 7429 Ainanani Place, Honolulu, Hawaii (the "subject property").

Currently before the court is Defendants' Motion to Dismiss, in which they argue that the Complaint fails to state a cognizable claim. For the reasons set forth below, the court GRANTS the Motion and dismisses the Complaint with leave to amend as to certain claims.

## II. BACKGROUND

### A.    Factual Background

The allegations of the Complaint tell a disjointed series of events in non-linear fashion, making it difficult to discern the basis of Plaintiff's claims. Piecing together the allegations, the court gleans the following:

On March 26, 2007, Plaintiffs signed a mortgage on the subject property in favor of Countrywide to secure a $600,320 loan. Defs.' Ex. A.[1] Although not completely clear, it appears that Plaintiff took this mortgage to purchase the subject property. Compl. ¶ 7.

The Complaint asserts that in consummating the loan, BAC and/or Countrywide allegedly (1) failed to disclose that Plaintiff could compare loan

---

[1] The court takes judicial notice of Defendants' Exhibit A, the mortgage, which is a public document. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (providing that a court may "take judicial notice of matters of public record outside the pleadings and consider them for purposes of a motion to dismiss") (quotations omitted).

terms with other lenders; (2) failed to provide Plaintiff sufficient time to compare

loan terms with other lenders; (3) failed to disclose Plaintiff's consumer rights or

the interest rates that Plaintiff would have to pay over the lifetime of the loan;

(4) overstated Plaintiff's income on the loan application to increase Plaintiff's

chance of qualifying for a loan; (5) failed to inform Plaintiff that Defendants failed

to follow reasonable underwriting guidelines and that the loan would be

securitized; and (6) failed to provide various documents including a completed

copy of her loan application, the initial loan disclosures, a signed and dated final

truth in lending statement, a signed and dated good faith estimate, a signed and

dated Servicing Transfer Disclosure and adjustable rate booklet, a final HUD-1

Settlement Statement, the Gramm Leach Bailey Act disclosures, or a statement of

her rights under the Fair and Accurate Credit Transaction Act. Compl. ¶¶ 14-15,

17, 22-34.

Despite the Complaint's allegations that BAC engaged in misconduct

in the consummation of the mortgage loan, the Complaint alleges that the loan

and/or mortgage were subsequently transferred to BAC such that it is unclear

precisely what role BAC played in the original transaction. *Id.* ¶ 35.

Plaintiff suffered financial hardship and sought modification of the

loan. *Id.* ¶¶ 9, 37-38. Plaintiff received and performed under a Sallie Mae loan

forbearance agreement for the six-month period from December 2009 through May 2010, but BAC ultimately cancelled the loan modification process and sold the subject property through foreclosure on March 9, 2011.  *Id.* ¶¶ 10-13.  The Complaint alleges that "Defendant" failed to negotiate in good faith and allow Plaintiff time to receive a loan modification.  *Id.* ¶¶ 40-41.

**B.     Procedural Background**

On March 7, 2011, Plaintiff filed this action.  The Complaint alleges claims titled (1) Violation of Statutory Duties (Count I); (2) Fraud (Count II); (3) Mistake (Count III); (4) Unconscionability (Count IV); (5) Unfair and Deceptive Practices (Count V); (6) Breach of Fiduciary Duty (Count VI); (7) Failure to Act in Good Faith (Count VII); (8) Injunctive Relief (Count VIII); (9) Recoupment (Count IX); (10) Unjust Enrichment (Count X); and (11) Negligent and/or Intentional Infliction of Emotional Distress ("NIED" and/or "IIED") (Count XI).

On March 31, 2011, Defendants filed their Motion to Dismiss.  Plaintiff filed an Opposition on May 3, 2011, and Defendants filed a Reply on May 10, 2011.  A hearing was held on May 24, 2011.

///

///

# III.  STANDARDS OF REVIEW

## A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief.  *Id.* at 1950.

**B.      Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud." *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement.  *Id.* (citation and quotation signals omitted).  Where there are multiple defendants, Plaintiffs cannot "lump multiple defendants together" and instead must "differentiate their allegations [between defendants]." *Destfino v. Kennedy*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."

(citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

## IV. <u>DISCUSSION</u>

Over the last two years, an influx of mortgage foreclosure cases has flooded this court's docket.[2] Many complaints mirror one another, and this court has entered numerous orders outlining the pleading requirements for the various claims the court sees time and again. Despite the volume of caselaw outlining the requirements to allege certain claims, the court often sees the same basic complaints presented by the same counsel. The claims in this action are almost verbatim the same as those alleged in *Kapahu v. BAC Home Loans Servicing, LP*, 2010 WL 2734774 (D. Haw, July 8, 2010), which was brought by the same counsel

---

[2] In 2010, 141 mortgage foreclosure and/or TILA actions were filed in the District of Hawaii, compared to 2007 when only eight cases were filed and 2008 when eleven cases were filed. Thus far in 2011, sixty-two new mortgage foreclosure cases have been filed, setting a pace on par with 2010.

representing Plaintiff in this action, and which this court dismissed for failure to state a claim on July 8, 2010, almost eight months prior to the March 7, 2011 filing of the instant complaint.  Further, Plaintiff's counsel has had benefit of numerous orders in which he has appeared and in which the court has dismissed similar claims for failure to state a cognizable claim.  *See, e.g.*, *Rymal v. Bank of Am.*, 2011 WL 1361441 (D. Haw. Apr. 11, 2011) (dismissing similar complaint); *Casino v. Bank of Am.*, 2011 WL 1704100 (D. Haw. May 4, 2011) (similar complaint); *Letvin v. Amera Mortg. Corp.*, 2011 WL 1603635 (D. Haw. Apr. 27, 2011) (similar complaint); *Enriquez v. Aurora Loan Servs., LLC*, 2011 WL 1103809 (D. Haw. Mar. 22, 2011) (dismissing complaint and issuing order to show cause what sanctions should not issue against Plaintiff's counsel).  As a result, it is inexplicable why Plaintiff's counsel presents the same deficient Complaint once again in this action.  Plaintiff counsel's insistence on bringing the same deficient claims in each action, despite the numerous orders by the court explaining their deficiencies, results in a waste of parties' and this court's resources.  The court therefore strongly cautions Plaintiff's counsel that he must be mindful of his duty to bring claims that are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Nonetheless, the court (once again) proceeds to explain why this Complaint fails to state a claim upon which relief can be granted.

## A.    Failure to Plead Facts as to Each Defendant

As an initial matter, Defendants argue that the Complaint should be dismissed because it is unclear exactly what Plaintiff is asserting against each particular Defendant. Defs.' Mot. at 6. The court agrees -- none of the individual counts of the Complaint makes any particular allegations as to any specific Defendant, and the general allegations of the Complaint for the most part lump Countrywide and BAC together. Such conclusory pleading fails to state a claim that is plausible on its face as to any Defendant. Indeed, the Complaint leaves entirely unclear (1) with whom Plaintiff entered into the mortgage transaction; (2) when the mortgage transaction took place; and (3) how each Defendant participated in the mortgage transaction, the loan modification, and the foreclosure.

In opposition, Plaintiff asserts that Bank of America, BAC, and Countrywide are all alter egos of each other because Bank of America purchased the assets and liabilities of Countrywide and various documents establish that these entities use each name interchangeably.[3] Pl.'s Opp'n at 13-14. Plaintiff ignores,

_____

[3] Incongruously, Plaintiff also asserts that only Countrywide and BAC filed the Motion such that her claims against Bank of America should stand. *See* Pl.'s Opp'n at 13. Plaintiff ignores, however, that she did not name Bank of America by itself as a Defendant, but rather
(continued...)

however, that the focus of a motion to dismiss is limited to the allegations of the Complaint, and Plaintiff fails to make such allegations in her Complaint. Accordingly, the court finds that as a general matter, the Complaint fails to state a claim as to any Defendant.

## B.    Violation of Statutory Duties (Count I)

Count I, labeled "Violation of Statutory Duties," alleges that "Defendant or one or more of them" violated "various statutory duties pursuant to the Real Estate Settlement Procedures Act (12 USC 2601 et seq.), the Equal Credit Opportunity Act (Reg. B, 12 CFR 202), [] the Fair Credit Reporting Act (15 USC 1681), and the Truth in Lending Act (12 CFR Sec. 226.23(h) et alia." Compl. ¶ 51.

As the court has already explained in *Kapahu*, 2010 WL 2734774, at *4, this claim fails because although the background of the Complaint outlines a laundry list of Defendants' alleged failures to provide various documents and information to Plaintiff, Count I fails to identify what particular conduct Plaintiff asserts violates each of these laws, or even the particular provisions of these laws that Defendants allegedly violated. By failing to put forth any specific factual or

---

[3](...continued)
named as a Defendant "Bank of America d/b/a/ BAC Home Loans Servicing, LP." Accordingly, the only two named Defendants in this action -- Countrywide and BAC -- have sought dismissal of the Complaint.

legal allegations -- and link those allegations to the particular statutory violations -- Plaintiff does not provide Defendants with fair notice of the wrongs they have allegedly committed.  This ground alone warrants dismissal of Count I.

Because the court grants Plaintiff leave to amend as to some claims potentially encompassed in Count I, the court once again attempts to provide Plaintiff's counsel with further guidance.  And when examining all of the facts alleged in the Complaint, the court agrees with Defendants that Plaintiff has failed to allege a cognizable claim for violation of TILA, RESPA, ECOA, or the FCRA. The court addresses these provisions in turn.

### 1. TILA

Defendants argue, among other things, that Plaintiff's TILA claims for damages and rescission are time-barred.  To the extent the court can decipher the allegations of the Complaint, the court agrees.

### a. *Damages under TILA*

Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  For violations of TILA's disclosure requirements, this one-year period generally begins to run from the date of consummation of the loan.  *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).  Equitable tolling may nonetheless apply in certain

circumstances:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule, the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

*Id.* Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).

Although the Complaint provides no allegations as to when the mortgage was entered into and otherwise confusingly starts its recitation of facts on Plaintiff's efforts at loan modification, Plaintiff entered into the mortgage loan transaction on March 26, 2007. *See* Defs.' Ex. A. Accordingly, Plaintiff's TILA claim for damages is time-barred unless equitable tolling applies -- it was brought almost four years after consummation of the loan transaction. With that said, however, the Complaint pleads no facts indicating that any Defendant prevented Plaintiff from discovering the alleged TILA violation or caused Plaintiff to allow

the filing deadline to pass. *See, e.g.*, *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Without any factual allegations that support the inference that Plaintiff did not have a reasonable opportunity to discover the TILA violations, the Complaint, even when liberally construed, does not support tolling the statute of limitations. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (granting leave to amend complaint to allege lack of reasonable notice to establish diligence where the facts alleged did not foreclose lack of reasonable notice as a matter of law); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902-03 (9th Cir. 2003) (rejecting argument for equitable tolling of the TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations).

In opposition, Plaintiff asserts that she was "tricked" by Defendants "due to their delays and misrepresentations concerning [Plaintiff's] eligibility for a loan modification." Pl.'s Opp'n at 17. No such allegations appear in the

Complaint. But even if they did, they appear irrelevant -- such allegations do not address when Plaintiff first learned of the TILA violations and why she did not learn of them earlier.

Accordingly, Plaintiff's TILA claim for damages is DISMISSED with leave to amend.

b.   *Rescission under TILA*

Plaintiff's claim for rescission pursuant to TILA fails for several reasons.

First, Plaintiff does not have a right of rescission because TILA specifically exempts from rescission "residential mortgage transactions," which are "transaction[s] in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of the dwelling." 15 U.S.C. §§ 1635(e)(1), 1602(w). Although not entirely clear, it appears from the allegations of the Complaint that Plaintiff entered into the mortgage transaction to purchase the subject property. *See* Compl. ¶ 7. Accordingly, this mortgage transaction falls within this exemption and Plaintiff cannot seek rescission pursuant to TILA.

Second, even if Plaintiff did not enter into the mortgage to purchase the subject property, rescission is not possible because as the Complaint alleges,

the subject property has been sold.  *See* Compl. ¶ 11.  Specifically, TILA provides

in relevant part that "[a]n obligor's right of rescission shall expire three years after

the date of consummation of the transaction or upon the sale of the property,

whichever occurs first . . . ." 15 U.S.C. § 1635(f); *see also* 12 C.F.R.

§ 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the

right to rescind shall expire 3 years after consummation, upon transfer of all of the

consumer's interest in the property, or upon sale of the property, whichever occurs

first.").  It does not matter if the sale was not voluntary -- the Official Staff

Commentary to Regulation Z explains that "[a] sale or transfer of the property need

not be voluntary to terminate the right to rescind.  For example, a foreclosure sale

would terminate an unexpired right to rescind."  Official Staff Commentary to Reg.

Z, 12 C.F.R. § 226.23(a)(3); *see also Rodenhurst v. Bank of Am.*, --- F. Supp. 2d ---

-, 2011 WL 768674, at *7 (D. Haw. Feb. 23, 2011); *Valdez v. Flexpoint Funding

Corp*., 2010 WL 3001922, at *7 (D. Haw. July 30, 2010).

Finally, any TILA claim for rescission is time-barred.  The right to

rescission expires "three years after the date of consummation of the transaction or

upon the sale of the property, whichever occurs first[.]"  15 U.S.C. § 1635(f).

Section 1635(f) is an absolute statute of repose barring "any [TILA rescission]

claims filed more than three years after the consummation of the transaction."

*Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King*, 784 F.2d at 913). As such, the three-year period is not subject to equitable tolling. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (stating that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if a lender failed to make the required disclosures). Plaintiff entered into the loan transaction in March 2007, and did not bring this action until almost four years later in March 2011. Plaintiff's claim for TILA rescission therefore also fails as barred by the statute of limitations.

Accordingly, the court DISMISSES Plaintiff's TILA claim for rescission without leave to amend.

## 2.    RESPA

The Complaint includes no allegations that appear to state violations of RESPA. Plaintiff's Opposition confirms this fact -- although Plaintiff asserts that Defendants violated RESPA by failing "to provide required truth in lending disclosures and RESPA good faith estimates," Pl.'s Opp'n at 16, this court has already explained that such allegations do not state a RESPA violation. *See Peelua v. Impac Funding Corp.*, 2011 WL 1042559, at *7-8 (D. Haw. Mar. 18, 2011). Plaintiff further asserts that Defendants have failed to respond to qualified written requests for information, Pl.'s Opp'n at 15-16, but no such allegations appear in

the Complaint.[4]

Further, to the extent Plaintiff asserts a RESPA violation concerning events that occurred during consummation of the mortgage loan, the statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation. Specifically, 12 U.S.C. § 2614 provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . .

While the Ninth Circuit has not addressed the precise issue, this court has found that equitable tolling may apply to a RESPA claim. *See, e.g.*, *Amina v. WMC Mortg. Corp.*, 2011 WL 1869835, at *8 (D. Haw. May 16, 2011); *Sakugawa v.*

---

[4] In support of this assertion, Plaintiff submits letters she sent to Bank of America and BAC seeking information regarding her loan. *See* Pl.'s Exs. E-F. As this Order addresses a Motion to Dismiss, the court limits its review to the allegations of the Complaint and those facts of which the court may take judicial notice. If Plaintiff chooses to amend the Complaint to assert a RESPA violation for failure to properly respond to a qualified written request, however, she must ensure that she can allege facts that state a violation of 12 U.S.C. § 2605(e)(1)(A) (providing that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . .").

*IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *4 (D. Haw. Nov. 24, 2010); *see also*, *McGinley v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 4065826, at *7 (W.D. Wash. Oct. 15, 2010); *Palestini v. Homecomings Fin., LLC*, 2010 WL 3339459, at *4 (S.D. Cal. Aug. 23, 2010); *Bonner v. Select Portfolio Servicing, Inc.*, 2010 WL 2925172, at *12 (N.D. Cal. July 26, 2010).

        As stated above for Plaintiff's TILA claim for damages, Plaintiff brought this action well past either the one- or three-year statute of limitations for RESPA violations and the Complaint includes no allegations suggesting that equitable tolling may apply.  The court therefore DISMISSES Plaintiff's RESPA claim with leave to amend.

        3.    **ECOA**

        As pleaded, the court cannot discern the basis for an ECOA violation. Plaintiff nonetheless asserts in her Opposition that Defendants failed to provide Plaintiff a copy of the appraisal report.  Pl.'s Opp'n at 19.

        Under ECOA, "[e]ach creditor shall promptly furnish an applicant, upon written request by the applicant made within a reasonable period of time of the application, a copy of the appraisal report used in connection with the applicant's application for a loan that is or would have been secured by a lien on residential real property."  15 U.S.C. § 1691(e).  A claim for violation of ECOA

must be brought no later than two years "from the date of occurrence of the violation," 15 U.S.C. § 1691e(f), but equitable tolling may apply under certain circumstances. *See Hafiz v. Greenpoint Mortg. Funding, Inc*., 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009).

The Complaint fails to assert a necessary prerequisite to Plaintiff's ECOA claim -- that Plaintiff made a written request for the appraisal report within a reasonable time of his application. Further, even if Plaintiff did include such an allegation, Plaintiff applied for this loan in March 2007 and the Complaint includes no allegations indicating that equitable tolling applies. The court therefore DISMISSES Plaintiff's ECOA claim with leave to amend.

### 4.    FCRA

Again, the court is unable to discern the basis of this claim. Plaintiff asserts, however, that the basis of this claim is that BAC "misapplied payments and then reported inaccurate or improper information to credit reporting agencies . . . . " Pl.'s Opp'n at 20. Even if the Complaint included such allegations, they would be insufficient to state a claim for violation of the FCRA.

Specifically, pursuant to 15 U.S.C. § 1681s-2(a), furnishers of credit information have a duty to provide accurate information to a credit reporting agency. *See also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th

Cir. 2009). These duties are enforceable only by federal and state agencies. *See id*; *see also Nelson v. Chase Manhattan Mortg. Corp*., 282 F.3d 1057, 1059-60 (9th Cir. 2002); 15 U.S.C. § 1681s-2(d) (noting that duties created under § 1681s-2(a) are enforced exclusively by the Federal agencies and officials and State officials). An individual may bring a private cause of action only under 15 U.S.C. § 1681s-2(b), where the furnisher is given notice from a credit reporting agency of a dispute and fails to investigate within specified time limits. *See also Nelson*, 282 F.3d at 1060. In other words, "[i]t is only after (1) a consumer has notified a credit reporting agency of an inaccuracy, (2) the agency has notified the furnisher, and (3) the furnisher has failed to take action, that a consumer may sue the furnisher." *See Diana I Am v. Nat'l City Mortg. Co.*, 2010 WL 571936, at *10 (D. Haw. Feb. 17, 2010).

The Complaint includes no allegations that Plaintiff complied with these prerequisites to bringing this claim -- Plaintiff does not assert that (1) she notified any credit reporting agency of any inaccuracies in his credit report, (2) the credit reporting agency notified any Defendant, or (3) that such Defendant, upon notification, failed to investigate. Accordingly, the court DISMISSES Plaintiff's FCRA claim with leave to amend.

**C.      Fraud (Count II) and Mistake (Count III)**

Count II, titled "Fraud," alleges that:

> Defendant or one or more of them breached their duties
> by misrepresenting [Plaintiff's] income, by
> misrepresenting and/or concealing material facts, such as
> the misstatement of [Plaintiff's] income, the failure of
> defendant or one or more of them to follow reasonable
> underwriting guidelines to qualify [Plaintiff] for a loan,
> properly disclose the true terms of the loan, properly
> disclose the true amount of interest Plaintiffs [sic] would
> have to pay over the life of the loan, that property values
> were declining and would likely continue to do so in the
> foreseeable future, that they [sic] were likely to exhaust
> their savings and then not be able to pay the subject note,
> had a high likelihood of defaulting on the note, [and] that
> there would not be sufficient equity in the Property if
> they [sic] tried to refinance.

Compl. ¶ 56.

Count III, titled "Mistake," pleads in the alternative that if fraud is not

found, then "the transaction was entered into based upon mutual mistake which

entitles [Plaintiff] to rescission of the note and mortgage and/or reimbursement of

all monies that were paid . . . ." *Id.* ¶ 62.

As the court already explained once in *Kapahu*, these allegations are

insufficient to meet Plaintiff's burden under Rule 8, much less the more rigorous

requirements of Rule 9 that apply to these claims. *See* Fed. R. Civ. P. 9(b)

(requiring a party to state with particularity the circumstances constituting fraud or

mistake).  Instead, these allegations merely give lip service to the basic elements of

a fraud and/or mistake claim, and fail to assert "particularized allegations of the

circumstances *constituting* fraud" or mistake such as the time, place, and nature of

the alleged actions, and how each Defendant participated in the fraud and/or

mistake.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547-48.  Indeed, the

Complaint leaves completely unanswered precisely what actions each Defendant

took that can form the basis of a fraud or mistake claim.  *See also Moore v.*

*Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (stating that

Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to

individual defendants).

   In opposition, Plaintiff asserts that she "cannot allege further specific

facts about exactly who engaged in exactly what fraudulent activity, exactly when,

or exactly where; that level of specific information will need to be gotten from

defendants and others by way of [discovery]."  Pl.'s Opp'n at 21.[5]  The court

rejects this argument -- Plaintiff bases these claim on misrepresentations made

during consummation of the loan; certainly Plaintiff can identify who she entered

---

[5] Plaintiff also asserts that "in accordance with F.R.C.P. 56(d), REY requests a
reasonable opportunity to conduct discovery that REY anticipates will establish the extent of
Defendants' liability."  Pl.'s Opp'n at 22-23.  Plaintiff is confused -- a Rule 56(d) request is
appropriate only in response to a motion for summary judgment, not a motion to dismiss.  The
court addresses Plaintiff's request for discovery in more detail below.

into the mortgage with, when this transaction took place, and how each Defendant made misrepresentations to her in that process.

The court therefore DISMISSES Plaintiff's claims for fraud and mistake with leave to amend.

**D.    Unconscionability (Count IV)**

The Complaint alleges that Plaintiff "did not understand the loan transaction, or the true terms of the note and mortgage, and was not fully and timely informed of the same by defendant or one or more of them," such that "the terms and conditions of the note and mortgage are unconscionable."  Compl. ¶¶ 65-66.

"Unconscionability" is generally a defense to the enforcement of a contract, and is not a proper claim for affirmative relief.  *See, e.g.*, *Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); *Carey v. Lincoln Loan Co.*, 125 P.3d 814, 829 (Or. App. 2005) ("[U]nconscionability is not a basis for a separate claim for relief."); *see also Barnard v. Home Depot U.S.A., Inc.*, 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law

or the UCC allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part of a different -- that is, independent -- cause of action, such a claim "is asserted to prevent the enforcement of a contract whose *terms* are unconscionable." *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[6]  In *Skaggs*, this court dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not any specific contractual term.  *Id.*  Likewise, the Complaint fails to challenge any particular term as unconscionable in an affirmative claim where the unconscionable terms may be relevant to that particular claim.

Accordingly, Count IV is DISMISSED with leave to amend.

---

[6] In *Skaggs*, this court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission."  2010 WL 5390127, at *3 n.2 (citing *Thompson v. AIG Haw. Ins. Co.*, 111 Haw. 413, 142 P.3d 277 (2006)).  The court did not mean to suggest that an affirmative claim for "unconscionability" without more is a proper cause of action.  Even in *Thompson*, the operative complaint did not assert a separate *count* for rescission or unconscionability.  *See Thompson*, 111 Haw. at 417, 142 P.3d at 281 (indicating the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under HRS § 480-2).  In *Thompson*, the remedy of rescission was based on an independent claim.

**E.     Unfair and Deceptive Acts or Practices (Count V)**

The Complaint alleges that the "wrongful acts and/or omissions of defendant or one or more of them constitute unfair and deceptive acts and practices in the conduct of business in violation of federal (15 USC Sec. 1802 et seq.) and state laws (HRS Sec. 480-2 and 480-13)."  Am. Compl. ¶ 68.

As *Kapahu* clearly explained to Plaintiff's counsel, the federal statute Plaintiff cites -- 15 U.S.C. § 1802 *et seq.* -- is found in the United States Code chapter on Newspaper Preservation.  It therefore appears that Plaintiff's counsel (once again) has cited this statute in error and in any event has not pled sufficient facts to explain its relevance to this action.

As for Plaintiff's allegation that Defendants violated Hawaii state law, Count V is wholly conclusory, not even paying lip service to the general elements of a claim for violation of Hawaii Revised Statutes ("HRS") § 480-13.  *See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc*., 113 Haw. 77, 113-14, 148 P.3d 1179, 1215-16 (2006) (stating that there are "three elements essential to recovery under H.R.S. § 480–13: (1) a violation of H.R.S. chapter 480; (2) injury to the plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages").  Further, where a Chapter 480 claim is based on fraudulent acts, a plaintiff must plead such claim with particularity.  *See Smallwood v. NCsoft Corp.*,

730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010) (relying on *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009), to find that Chapter 480 claims that sound in fraud must be pled with particularity). As pled, it appears that at least some of Plaintiff's allegations in support of her Chapter 480 claim sound in fraud given that she incorporates by reference her (deficient) allegations of fraud. *See* Compl. ¶ 67. But none of the allegations asserts "particularized allegations of the circumstances *constituting* fraud" such as the time, place, and nature of the alleged fraud, and how each Defendant participated in the fraud. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d at 1547-48. Accordingly, Plaintiff's allegations fail to meet either Rule 8's general pleading requirement or Rule 9(b)'s particularity requirement.

Count V is DISMISSED with leave to amend.

## F.     Breach of Fiduciary Duty (Count VI)

Count VI asserts that Plaintiff trusted "defendant and one or more of them" in entering into the loan, and that "defendant or one or more of them breached their fiduciary duties to [Plaintiff]" by, among other things, "making misrepresentations of material fact, omitting to make disclosures of various material facts, [and] not properly qualifying them [sic] for the subject loan." Compl. ¶¶ 72-73.

These allegations fail to state a claim against Defendants. In *McCarty v. GCP Mgmt., LLC*, 2010 WL 4812763 (D. Haw. Nov. 17, 2010), this court set forth a myriad of caselaw for the well-settled proposition that generally a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their borrowers. *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); *Miller v. U.S. Bank of Wash.*, 865 P.2d 536, 543 (Wash. App. 1994) ("The general rule . . . is that a lender is not a fiduciary of its borrower."); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances."); *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship between the borrower and lender.'") (quoting *Oaks Mgmt. Corp. v. Super. Ct.*, 51 Cal. Rptr. 3d 561 (Cal. App. 2006)); *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 373 (D. D.C. 2008) ("[T]he relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature.") (citation omitted).

*Id.*, at *5.

Given this rule, Plaintiff fails to state a claim for breach of fiduciary duty against Defendants.[7] Nothing in the Complaint alleges "special

---

[7] Unlike lenders, brokers generally owe fiduciary duties to their clients. *See, e.g.*, *Mortensen v. Home Loan Ctr., Inc.*, 2009 WL 113483, at *4 (D. Ariz. Jan. 16, 2009) (citing

(continued...)

circumstances" that might impose a fiduciary duty in this mortgage-lending situation against Defendants. *See, e.g.*, *Shepherd v. Am. Home Mortg. Servs., Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009) ("Plaintiff cites no authority for the proposition that AHMSI or Deutsche owed a duty to not cause plaintiff harm in their capacities as servicer and [successor] to the original lender in ownership of the loan, respectively. . . . In fact, loan servicers do not owe a duty to the borrowers of the loans they service.").

In opposition, Plaintiff asserts that this area of law is still developing and that "where there is an imbalance of power in a debtor-creditor relationship . . . courts should find as a matter of law that a 'fiduciary duty' arises out of the special relationship and circumstances presented." Pl.'s Opp'n at 27-28. The only case Plaintiff cites for this proposition, *Barrett v. Bank of America*, 229 Cal. Rptr. 16 (Cal. App. 1986), does not suggest any "developing law" as argued by Plaintiff, and indeed has been criticized as "inconsistent with both past authority and current trends in the law." *Price v. Wells Fargo Bank*, 261 Cal. Rptr. 735, 740 (Cal. App.

---

[7](...continued)
cases indicating that mortgage brokers have fiduciary duties to their clients); *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1119 (E.D. Cal. 2009) (same); *cf. Han v. Yang*, 84 Haw. 162, 172, 931 P.2d 604, 614 (Haw. App. 1997) ("A real estate broker is a fiduciary and consequently must exercise the 'utmost good faith, integrity, honesty, and loyalty,' and must diligently uphold a legally imposed duty of due care.") (citations omitted). Because Plaintiff does not assert any allegations establishing that any of the Defendants were acting in the capacity as a broker, the court need not determine if Plaintiff could state a claim against a broker.

1989).  Rather, as explained above, the proposition that the borrower-lender relationship is not fiduciary in nature is well-settled.

Accordingly, Count VI is DISMISSED with leave to amend.

## G.    Failure to Act in Good Faith (Count VII)

The Complaint alleges that "defendant or one or more of them owed [Plaintiff] a duty to deal with them in good faith and in a fair manner," *id.* ¶ 77, and breached this duty through various misrepresentations and omissions.  *Id.* ¶¶ 78-79.

This claim asserts the tort of "bad faith."  *See Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract).  But, although bad faith is an accepted tort where the plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based upon a mortgage loan contract.  *See Jou v. Nat'l Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (explaining that "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in *Best Place*, 82 Haw. at 128, 920 P.2d at 342, requires a contractual relationship between an insurer and an insured" (citations omitted)).

Moreover, although commercial contracts for "sale of goods" also

contain an obligation of good faith in their performance and enforcement, this

obligation does not create an independent cause of action.  *See Stoebner Motors,*

*Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1037-38 (D. Haw.

2006).  And Hawaii courts have noted that "[o]ther jurisdictions recognizing the

tort of bad faith . . . limit such claims to the insurance context or situations

involving special relationships characterized by elements of fiduciary

responsibility, public interest, and adhesion."  *Id.* at 1037 (quoting *Francis v. Lee*

*Enters.*, 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).

Finally, even assuming a bad faith tort exists outside the insurance

context, it is well-settled that "[a] party cannot breach the covenant of good faith

and fair dealing before a contract is formed."  *Contreras v. Master Fin., Inc.*, 2011

WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing *Indep. Order of Foresters v.*

*Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied

covenant relates only to the performance of obligations under an extant contract,

and not to any pre-contract conduct.")).  Hawaii follows this distinction.  *See*

*Young v. Allstate Ins. Co.*, 119 Haw. 403, 427, 198 P.3d 666, 690 (2008)

(indicating the covenant of good faith does not extend to activities occurring before

consummation of an insurance contract).

Because the Complaint alleges no "special relationship characterized

by elements of fiduciary responsibility, public interest, and adhesion," the court finds that Plaintiff has failed to state a claim for bad faith. Further, Plaintiff's allegations regarding pre-contract activities (failing to disclosure terms, failing to conduct proper underwriting, making an improper loan to Plaintiff, or any misconduct in the potential loan modification), cannot be the basis of a claim for bad faith. *See id.*; *see also Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

Accordingly, Count VII is DISMISSED, with leave to amend, if possible, to state a claim based on post-contract conduct that involves a "special relationship characterized by elements of fiduciary responsibility, public interest, and adhesion."

## H. Injunctive Relief (Count VIII)

The Complaint asserts that Plaintiff is entitled to injunctive relief and a stay of any foreclosure proceedings until Plaintiff's claims are resolved. Compl. ¶ 83.

The court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *Jensen v. Quality Loan*

*Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action"); *Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059-60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); *Plan Pros, Inc. v. Zych*, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("[N]o independent cause of action for injunction exists."); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same). Injunctive relief may be available if Plaintiff is entitled to such a remedy on an independent cause of action.

Accordingly, the court DISMISSES Count VIII without leave to amend. If injunctive relief is proper, it will be because Plaintiff met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure -- on an independent cause of action.

## I.      Recoupment (Count IX)

Count IX, labeled "Recoupment" alleges that "[a]s a result of the various wrongful acts and/or omissions made by defendant or one or more of them, [Plaintiff] is entitled to equitable recoupment of all monies paid by them [sic] with regard to the subject loan transaction . . . ." *Id.* ¶ 87.

As with Plaintiff's other claims, this allegation is wholly conclusory and provides no factual basis for why Plaintiff is entitled to recoupment. Further,

even if it were not wholly conclusory, the court finds no cognizable basis for such claim. To the extent based on TILA, TILA makes recoupment available only as a "defense" in an "action to collect a debt," 15 U.S.C. § 1640(e), and this court has held that "[n]on-judicial foreclosures in Hawaii are not 'actions to collect the debt' for purposes of recoupment under § 1640(e)." *Araki v. One West Bank FSB*, 2010 WL 5625969, at *6 (D. Haw. Sept. 8, 2010). Further, equitable recoupment is a defense, not a claim. *City of Saint Paul, Alaska v. Evans*, 344 F.3d 1029, 1034 (9th Cir. 2003) ("[E]quitable recoupment has been allowed by state courts as well, but it has always been recognized as a defense, not a claim.").

In opposition, Plaintiff argues that she may state a claim for recoupment pursuant to HRS § 490:3-305(a)(3), which provides that "the right to enforce the obligation of a party to pay the instrument is subject to . . . [a] claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument . . . ." Defendants do not address whether Plaintiff might be able to state a claim pursuant to HRS § 490:3-305(a)(3), and even if HRS § 490:3-305(a)(3) could provide a basis for a claim, the Complaint includes no factual allegations supporting such claim.

Accordingly, the court DISMISSES Count IX with leave to amend.

**J.      Unjust Enrichment (Count X)**

The Complaint incorporates the previous paragraphs, and then summarily asserts that "as a result of the various wrongful acts and/or omissions made by defendant or one or more of them, defendant or one or more of them have been unjustly enriched . . . ."  Compl. ¶ 89.

The conclusory allegations of the Complaint are insufficient to suggest a claim for relief that is plausible on its face.  To bring an unjust enrichment claim, a plaintiff must prove two elements: "(a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiffs."  *Porter v. Hu*, 116 Haw. 42, 53, 169 P.3d 994, 1005 (Haw. App. 2007) (citing *Small v. Badenhop*, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985)).  Further, there must be "an absence of an adequate remedy at law."  *Id.* (citations omitted).  But the Complaint makes wholly unclear what benefits Defendants received without adequate legal basis, therefore failing to provide fair notice to each Defendant regarding the nature of Plaintiffs' unjust enrichment claim.  *See, e.g.*, *Khomich v. Bank of Am., N.A.*, 2011 WL 1087858, at *8-9 (E.D. Cal. Mar. 23, 2011) (dismissing unjust enrichment claim based on alleged "higher interest rates, fees, rebates, kickbacks and profits, as well as payments from various third parties," because, among other reasons, plaintiff failed to "state any facts in

support of the contention that Defendants received and retained benefits and

payments to which they were not entitled"); *Sorrels v. J.P. Morgan Chase Nat'l*

*Corp. Servs., Inc.*, 2011 WL 662980, at *6 (S.D. Cal. Feb. 14, 2011) (dismissing

claim because "[t]he conclusory allegations plaintiffs[] provide do not show

'plausible liability' with respect to this claim"); *Gomez .v. World Savings Bank*

*FSB*, 2010 WL 5280004, at *5 (E.D. Cal. Dec. 13, 2010) ("[T]he FAC fails to

allege which Defendants receive what monies and thus fails to provide fair notice

of the nature of Plaintiff's unjust enrichment claim.").

      The court therefore DISMISSES Count X of the Complaint with leave

to amend.

## K.     Negligent and/or Intentional Infliction of Emotional Distress (Count XI)

      Count XI, asserting claims for NIED and/or IIED, alleges that:

> Defendant or one or more of them breached their duties
> by causing [Plaintiff] to suffer severe mental and
> emotional distress, by misleading them [sic], entering
> into a loan they [sic] were not properly qualified for, in
> causing them [sic] to lose their savings, by giving them
> false hope they [sic] were qualified for a loan
> modification, that they [sic] would be allowed loan
> assistance or modification on reasonable terms that
> would allow [Plaintiff] to keep their interest in the
> Property, among other things.

Compl. ¶ 92.

      Neither the allegations in Count XI nor the other portions of the

Complaint sufficiently identify Defendants' conduct that supports this claim -- the allegations are simply too generalized and lacking in clarity to satisfy the requirements of Rule 8.  Further, as explained above as to Plaintiff's other claims, Plaintiff has failed to adequately allege any legally cognizable duty that Defendants may have to Plaintiff -- the Complaint fails to assert a claim for breach of fiduciary duty, bad faith, or any other claim for that matter.

Accordingly, the court DISMISSES this claim with leave to amend.

## L.    Plaintiff's Rule 56(d) Request

Plaintiff requests that the court grant her leave to conduct discovery pursuant to Federal Rule of Civil Procedure 56(d), "considering this is a developing area of law that is changing on a daily basis as more information as to the extent of the wrongful acts and omissions of lender and their servicers are being revealed and disclosed and discovered."  Pl.'s Opp'n at 34.  Plaintiff's request is baseless and appears to be nothing more than a stall tactic.

As an initial matter, Rule 56(d) applies only in the summary judgment context; it has no application in response to Defendants' Motion to Dismiss.  Even casting aside the label of Plaintiff's request, Plaintiff has provided no basis for why she should be entitled to discovery before she is even able to state a cognizable claim.  Although Plaintiff asserts "this is a developing area of law," Plaintiff's

Opposition includes scant law in support of any of her claims, and indeed, much of the law applicable to Plaintiff's claims is well-settled in this court and has already been explained to Plaintiff's counsel on multiple occasions. More telling, however, is that the Complaint failed to include many factual allegations that are certainly within Plaintiff's knowledge -- for example, when Plaintiff entered into the mortgage loan transaction, which Defendants she interacted with, when she discovered the TILA violations and/or how the TILA violations were hidden from her, when the mortgage loan was transferred to BAC, what misrepresentations Defendants made to Plaintiff, the amount of time Defendants provided Plaintiff to seek a loan modification, etc. In short, discovery is not necessary for Plaintiff to provide a basis for her claims, and would only stall adjudication of this action. The court therefore DENIES Plaintiff's request for discovery before amending the Complaint.

## V.  CONCLUSION

Based on the above, the court GRANTS Defendants' Motion to Dismiss. If she so chooses, Plaintiff may file an amended complaint asserting claims against Defendants for all counts above except for a TILA rescission claim

///

///

and injunctive relief, by June 27, 2011. Failure to file an amended complaint by June 27, 2011 will result in dismissal of this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 31, 2011.



/s/ J. Michael Seabright
—————————————————
J. Michael Seabright
United States District Judge

*Rey v. Countrywide Home Loans, Inc., et al.*, Civ. No. 11-00142 JMS/KSC, Order Granting Defendants Countrywide Home Loans, Inc. and BAC Home Loans Servicing, LP's Motion to Dismiss