IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LISA HINANO REY, | ) | CIVIL NO. 11-00142 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | DEFENDANTS COUNTRYWIDE |
| | ) | HOME LOANS, INC. AND BANK |
| COUNTRYWIDE HOME LOANS, | ) | OF AMERICA, N.A.'S MOTION |
| INC.; BANK OF AMERICA d/b/a BAC | ) | TO DISMISS PLAINTIFF'S |
| HOME LOANS SERVICING, LP; | ) | SECOND AMENDED |
| JOHN DOES 1-100; JANE ROES 1- | ) | COMPLAINT |
| 100; DOE CORPORATIONS, | ) | |
| PARTNERSHIPS AND OTHER | ) | |
| ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS COUNTRYWIDE HOME LOANS, INC. AND BANK OF AMERICA, N.A.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## I. INTRODUCTION

On March 7, 2011, Plaintiff Lisa Hinano Rey ("Plaintiff") filed this

action alleging claims against Defendants Countrywide Home Loans, Inc.

("Countrywide") and Bank of America d/b/a/ BAC Home Loans Servicing, LP

("BANA") (collectively, "Defendants"), for violations of the Truth in Lending Act,

the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the Fair Credit

Reporting Act, the Equal Credit Opportunity Act, and various state law claims

stemming from a mortgage transaction concerning real property located at 7429

Ainanani Place, Honolulu, Hawaii (the "subject property").

On June 1, 2011, the court dismissed the Complaint for failure to state

a claim, and on September 13, 2011, the court sanctioned Plaintiff's counsel, Robin

Horner, pursuant to Federal Rule of Civil Procedure 11 after he filed an Amended

Complaint that was substantially similar to the dismissed Complaint. The court

further granted Plaintiff leave to file a Second Amended Complaint ("SAC"),

which she did on September 27, 2011. The SAC asserts claims for violation of

RESPA and state law claims for fraud, violation of Hawaii Revised Statutes

("HRS") Ch. 480, and intentional infliction of emotional distress ("IIED") based

on the loan modification process she engaged in with Defendants.

Currently before the court is Defendants' Motion to Dismiss the SAC,

in which they assert that Plaintiff has failed to state a claim upon which relief can

be granted such that the SAC should be dismissed with prejudice. Based on the

following, the court GRANTS in part and DENIES in part Defendants' Motion to

Dismiss.

///

///

///

## II. BACKGROUND

**A.    Factual Background**

As alleged in the SAC, on March 26, 2007, Plaintiff entered into a mortgage loan transaction with Countrywide to purchase the subject property. Doc. No. 49, SAC ¶ 17.  Plaintiff subsequently suffered financial hardship, yet continued to make payments on her mortgage in a timely manner.  *Id.* ¶¶ 20-21.  In 2008, Plaintiff approached BANA (who by this point was apparently asserting ownership of the mortgage and note)[1] to seek relief from her loan payments through a work-out agreement, forbearance agreement, or loan modification.  *Id.* ¶ 22.  On May 12, 2009, Plaintiff made a work-out request to BANA.  *Id.* ¶ 23.

Effective November 29, 2009, "BANA [] entered into a repayment plan with [Plaintiff] . . . for six months."  *Id.* ¶ 29.  In the meantime, however, BANA also began to omit giving Plaintiff credit for her mortgage payments and misapplied seven of Plaintiff's payments.  *Id.* ¶ 24.

On January 8, 2010, BANA declined Plaintiff as qualified for a loan modification through the Home Affordable Modification Program ("HAMP").

---

[1] Although the SAC includes no allegations regarding the relationship between Countrywide and BANA, Plaintiff acknowledges in his Opposition that BANA is a "successor to Countrywide by Merger."  Doc. No. 57-1, Pl.'s Opp'n at 3.  At the January 23, 2012 hearing, Plaintiff further admitted that her claims were directed to BANA's, not Countrywide's, alleged misconduct.  To the extent the SAC asserts claims against Countrywide based on BANA's alleged misconduct, the court DISMISSES those claims.

*Id.* ¶ 25.  On February 29, 2010, however, BANA did an apparent about-face and told Plaintiff that it would honor the loan modification.  *Id.* ¶ 26.  Thus, on April 13, 2010, BANA offered Plaintiff a loan modification, which Plaintiff signed and returned by the May 10, 2010 deadline.  *Id.* ¶ 31.  In response, BANA told Plaintiff that her documents had been timely received, her paperwork was being processed, and she could disregard any foreclosure notices.  *Id.* ¶ 32.

From March 17, 2010 through at least June 7, 2010 -- apparently during the time that BANA was processing Plaintiff's loan modification -- BANA again omitted giving Plaintiff credit for her loan payments.  *Id.* ¶ 27.  As a result, BANA claimed that Plaintiff was behind thirteen loan payments even though it had misapplied at least seven payments.  *Id.* ¶ 28.  Further, on May 15, 2010, BANA declined Plaintiff's loan modification on the basis that Plaintiff had failed to return all the necessary paperwork by the May 10, 2010 deadline.  *Id.* ¶ 33.  In yet another about-face, however, on May 28, 2010, BANA gave Plaintiff "notice that her loan documents had been received and were in the completion status of processing." *Id.* ¶ 34.

In July 2010, one of Plaintiff's loan payments was returned on the basis that it needed to be notarized.  *Id.* ¶ 35.  Notarization was not a requirement of the loan modification and BANA had not previously required it.  *Id.*  On July

14, 2010, BANA returned Plaintiff's loan to foreclosure.  *Id.* ¶ 36.  As a result, BANA returned another check to Plaintiff on the basis the check was insufficient to reinstate the loan.  *Id.* ¶ 37.

On September 27, 2010, BANA issued a notice of intent to foreclose on November 29, 2010.  *Id.* ¶¶ 38, 39.  According to the SAC, this notice conflicts with BANA's previous assertion that an undisclosed investor owned the note on the subject property.  *Id.* ¶ 38.  After receiving this Notice, Plaintiff resubmitted her request for loan modification with all supporting documentation on October 9, 2010.  *Id.* ¶ 40.  By October 26, 2010, BANA was considering Plaintiff's request and told her that the subject property would not be subject to foreclosure during the review process, even though BANA was in fact still proceeding with the foreclosure  *Id.* ¶ 41.

The SAC further asserts that on October 27, 2010, "Plaintiff submitted a qualified written request to [BANA]," *id.* ¶ 42, and that BANA "failed to respond to the qualified written request within twenty days . . . and failed to resolve the matter within [sixty] days."  *Id.* ¶ 43.  Instead, on January 26, 2011, BANA responded to the qualified written request by reporting that the loan had not been paid since January 2010, which was not true.  *Id.* ¶ 44.  Further, on January 31, 2011, BANA informed Plaintiff that she was behind thirteen payments.  *Id.* ¶ 46.

BANA also allegedly "overstated the alleged overdue amounts and returned her payments making it impossible for [Plaintiff] to comply with the notes and mortgage or the forbearance and modification agreements." *Id.* ¶¶ 45-46.

On March 3, 2011, BANA "informed [Plaintiff] she was behind [ten] payments even though it had failed and refused to accept any payments from [Plaintiff]," and also asserted that Plaintiff must bring the loan current in order to reinstate the loan, even though BANA had failed to "properly account for and inform [Plaintiff] of the precise amounts due and failed to properly credit and offset her prior payments, and forego wrongfully charged fees." *Id.* ¶ 47. Thus, on March 9, 2011, the foreclosure sale went forward despite Plaintiff's efforts to reach an agreement on modification. *Id.* ¶ 48.

After the foreclosure sale, Plaintiff continued to receive statements from BANA for the modified loan payment amounts. *Id.* ¶ 49. Plaintiff was also informed that the owner of her loan was now "FNMA ACT/ACT," and that BANA "was not to be the loan servicer until July 1, 2011," apparently conflicting with BANA's role in handling the loan servicing up until this point. *Id.* ¶ 50. According to the SAC, BANA "made it impossible to know who the loan servicer was to be able to straighten out any confusion concerning the terms of the loan modification which certain employees were acknowledging would be honored,

while other employees refused to allow the modification to go into effect." *Id.*

¶ 51.  The SAC further asserts that BANA took these actions to prevent Plaintiff

"from performing in order to facilitate the foreclosure of the [subject property] and

wrongfully collect debt that was not owed." *Id.* ¶ 52; *see also id.* ¶ 53.  As a result,

the SAC asserts that Plaintiff "was completely left in the dark and misinformed as

to who was the real party in interest so she could discuss a work-out request and

confirm the precise amount of money the creditor was owned and make suitable

arrangements for a workout or modification." *Id.* ¶ 54.

## B.    Procedural Background

On March 7, 2011, Plaintiff filed this action by filing a boilerplate

Complaint (that is, a nearly identical Complaint that her counsel, Robin Horner,

had filed in several other actions) alleging claims against Defendants for violations

of various federal and state laws stemming from the mortgage transaction on the

subject property.  This court had already dismissed several of the boilerplate

Complaints Horner had filed in other actions, and on June 1, 2011, the court

dismissed the Complaint for the same reasons the court had already outlined to

Horner on numerous occasions (the "June 1, 2011 Order").  *See* Doc. No. 21.

Plaintiff failed to timely file an Amended Complaint, and the action

was dismissed on June 29, 2011.  Doc. Nos. 23, 24.  The court subsequently

granted Plaintiff's Motion to Reopen the action, and Plaintiff filed an Amended

Complaint on August 24, 2011.  Because the Amended Complaint suffered from

many of the same deficiencies as the Complaint, on September 13, 2011, the court

issued Rule 11 sanctions against Horner and granted Plaintiff leave to file her SAC.

On September 27, 2011, Plaintiff filed her SAC asserting claims for

violation of RESPA (Count I), fraud (Count II), violation of HRS Ch. 480 (Count

III), and IIED (Count IV).  On October 21, 2011, Defendants filed their Motion to

Dismiss the SAC.  Plaintiff filed her Opposition on January 4, 2012, and

Defendants filed their Reply on January 11, 2012.  A hearing was held on January

23, 2012.

## III.  <u>STANDARDS OF REVIEW</u>

### A.     **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also*

*Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This

tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

**B.      Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud." *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc) (emphasis in original), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. *Id*. (citation and quotation signals omitted). Where there

are multiple defendants, Plaintiffs cannot "lump multiple defendants together" and instead must "differentiate their allegations [between defendants]." *Destfino v. Kennedy*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted). However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

# IV. DISCUSSION

Defendants argue that Plaintiff has once again failed to state a claim upon which relief can be granted such that the SAC should be dismissed with prejudice. The court addresses each of Plaintiff's claims in turn.

## A. RESPA (Count I)

The SAC asserts that BANA violated RESPA by failing to acknowledge Plaintiff's October 27, 2010 qualified written request ("QWR") within twenty business days, and by failing to resolve the issues within sixty business days. Doc. No. 49, SAC ¶¶ 73-75. As a result, Defendants are allegedly liable to Plaintiff "in amounts equal to the sum of actual damage and such additional damages as the court may allow . . . ." *Id.* ¶ 77.

This claim fails for at least two reasons. First, Plaintiff has failed to allege any damages, despite the fact that this court has already notified Horner in other actions he has brought that failure to plead damages is fatal to this claim. *See, e.g.*, *Long v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 5079586, at *4 (D. Haw. Oct. 24, 2011); *Cootey v. Countrywide Home Loans, Inc.*, 2011 WL 4853333, at *7 (D. Haw. Oct. 12, 2011). As the court has already explained in these Orders, pursuant to 12 U.S.C. § 2605(f)(1), Plaintiff has a burden to plead and demonstrate he has suffered damages. Section 2605(f)(1) provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> (1) Individuals
>     In the case of any action by an individual, an amount equal to the sum of --
>     (A) any actual damages to the borrower as a result of the failure; and
>     (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

Because damages are a necessary element of a RESPA claim, failure to plead damages is fatal to a RESPA claim. *See, e.g.*, *Esoimeme v. Wells Fargo Bank*, 2011 WL 3875881, at *14 (E.D. Cal. Sept. 1, 2011) (dismissing claim where the plaintiff failed to "allege any pecuniary loss from defendant's alleged failure to respond to the QWR"); *Soriano v. Countrywide Home Loans, Inc.*, 2011 WL 1362077, at *6 (N.D. Cal. Apr. 11, 2011) (reasoning that "even if a RESPA violation exists, Plaintiff must show that the losses alleged are causally related to the RESPA violation itself to state a valid claim under RESPA"); *Shepherd v. Am. Home Mortg. Servs.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D. N.J. 2006))).

Although the SAC alleges in general that Defendants are liable to Plaintiff for damages, it fails to allege that Plaintiff suffered any actual damages *as a result* of the alleged RESPA violations.  *See Shepherd*, 2009 WL 4505925, at *3. Thus, Plaintiff has failed to allege a necessary element of her RESPA claim.

Second, Plaintiff has failed to comply with *Iqbal's* requirement that she plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (citations omitted).  Plaintiff appears to assert a violation of 12 U.S.C. § 2605(e)(1)(A), which provides that "[i]f any servicer of a federally related mortgage loan receives a [("QWR")] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days[.]"[2]  "Servicing" is defined as:

> receiving any scheduled periodic payments from a
> borrower pursuant to the terms of any loan, including
> amounts for escrow accounts described in section 2609

---

[2] A QWR is defined as:

> a written correspondence, other than notice on a payment coupon
> or other payment medium supplied by the servicer, that:
> (i) includes, or otherwise enables the servicer to identify, the name
> and account of the borrower; and (ii) includes a statement of the
> reasons for the belief of the borrower, to the extent applicable, that
> the account is in error or provides sufficient detail to the servicer
> regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). After receiving the QWR, within sixty days, the loan servicer must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of: (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable. *See* 12 U.S.C. § 2605(e)(2).

This court has already explained to Horner once that conclusory assertions that his client has made a QWR are insufficient to state a claim because the court need not accept legal conclusions. *See Long*, 2011 WL 5079586, at *6; *see also Iqbal*, 129 S. Ct. at 1950 (stating that mere conclusions "are not entitled to the assumption of truth"). The SAC fails to include any *facts* suggesting that Plaintiff's communication(s) to any of the Defendants was written or concerned servicing of his loan as defined by RESPA and triggered Defendants' duty to respond. This claim must therefore be dismissed for failure to state a claim. *See Lettenmaier v. Fed. Home Loan Mortg. Corp.*, 2011 WL 3476648, at *12 (D. Or. Aug. 8, 2011) (dismissing RESPA claim where "plaintiffs fail to attach a copy of their correspondence to the Complaint or to allege facts showing that the communication concerned servicing of the loan as defined by the statute");

*Manzano v. Metlife Bank N.A.*, 2011 WL 2080249, at \*7 (E.D. Cal. May 25, 2011)

(Plaintiff "cannot simply allege in conclusory fashion that the written

correspondence constituted QWRs."); *Aguilar v. Cabrillo Mortg*., 2010 WL

1909547, at \*2-3 (S.D. Cal. May 11, 2010) ("Although Plaintiffs correctly argue

that they have no affirmative duty to attach a copy of the letter to the SAC, they

still must allege sufficient facts to demonstrate that the letter sent to [defendant]

triggered the procedures set forth in 12 U.S.C. § 2605(e).").

       As to whether Plaintiff should be granted leave to amend this claim,

the history of this action, Plaintiff's Opposition, and Horner's statements at the

January 23, 2012 hearing confirm that any amendment would be futile.  Plaintiff

has already been given two chances to amend her RESPA claim.  Further, in her

Opposition, Plaintiff describes that her QWR requested "proof as to who was the

real party in interest with the right to enforce the underlying note and mortgage,"

Doc. No. 57-1, Pl.'s Opp'n at 6, and at the January 23, 2012 hearing, Horner

asserted that BANA failed to provide the name of the creditor.  But even if Plaintiff

was given the opportunity to assert these facts in a third amended complaint, such

allegation does not support that Plaintiff made a QWR -- Plaintiff's request does

not ask for information pertaining to loan "servicing" as defined by RESPA.  *See*

*Obot v. Wells Fargo Bank, N.A.*, 2011 WL 5243773, at \*2 (N.D. Cal. Nov. 2,

2011) (rejecting that email requesting the identity of the owner of plaintiff's loan and the original mortgage note proving ownership was a QWR under RESPA); *Patton v. Ocwen Loan Servicing, LLC*, 2011 WL 1706889, at \*3 (M.D. Fla. May 5, 2011) ("Because identifying the owner of a mortgage note does not relate to 'servicing' of the mortgage, 12 U.S.C. § 2605(i)(3), it is not a proper request in a QWR."); *Lawther v. Onewest Bank*, 2010 WL 4936797, at \*6 (N.D. Cal. Nov. 30, 2010) ("A loan servicer only has a duty to respond if the information request is related to loan servicing.") (citations omitted); *Jones v. PNC Bank, N.A.*, 2010 WL 3325615, at \*2 (N.D. Cal. Aug. 20, 2010) ("A QWR must seek information relating to the *servicing* of the loan; a request for loan origination documents is not a QWR."). The court therefore DISMISSES Count I of the SAC with prejudice.

## B. Fraud (Count II)

Count II asserts that Defendant committed fraud by making the various omissions and/or misrepresentations of material fact, including:

a. Concealing that Defendants would put Rey into default when she had made all payments in a timely manner;
b. Improperly and erroneously accounting for her payments;
c. Misrepresenting she was qualified for a work out;
d. Preventing REY from qualifying for or participating in the work out;
e. Attempting to get Rey to pay more money than the required loan modification payments;

16

f.    Hiding documents such as the executed
          modification agreement;
    g.    Failing to properly and timely disclose the true
          owner or investor so Rey could resolve her issues
          directly;
    h.    Foreclosing without having the proper chain of
          title to the note and mortgage[;] and
    i.    Wrongfully, improperly, and illegally reporting
          negative information as to the Plaintiff to one or
          more credit reporting agencies, resulting in
          Plaintiff having negative information on her credit
          reports and the lowering of her FICO scores such
          that she would not be able to qualify in the future
          to refinance the subject loan.

Doc. No. 49, SAC ¶ 81; *see also id.* ¶ 79.

Although Defendants argue that Plaintiff has failed to sufficiently

allege a fraud claim pursuant to Rule 9(b), the court disagrees.

Under Hawaii law, the elements of a fraud claim are that: "(1) false

representations were made by defendants, (2) with knowledge of their falsity (or

without knowledge of their truth or falsity), (3) in contemplation of plaintiff's

reliance upon these false representations, and (4) plaintiff did rely upon them."

*Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 386, 14 P.3d 1049, 1067 (2000) (internal

quotation marks and citations omitted)).

Reading the allegations in Count II in context with the other

allegations of the SAC, Plaintiff appears to assert that BANA failed to properly

account for Plaintiff's mortgage payments and improperly denied Plaintiff the

17

work-out for which she qualified so that BANA could improperly place Plaintiff in default and foreclose on the subject property. In carrying this scheme to fruition, BANA allegedly made various misrepresentations upon which Plaintiff relied including, for example, that foreclosure would not proceed during loan modification review, *see* Doc. No. 49, SAC ¶¶ 32, 41, that it owned the note and mortgage even though it later asserted that it did not; *id.* ¶¶ 38, 50, and, implicit with it servicing the loan, that it would properly credit Plaintiff's payments and not seek foreclosure while the loan was current. Plaintiff's reliance on these misrepresentations is clear enough -- Plaintiff continued to make her payments and seek a loan modification from BANA even though BANA was proceeding with foreclosure and possibly did not even own the note and/or mortgage. The SAC further alleges the time frames during which BANA failed to properly credit her payments and changed its positions on Plaintiff's loan modification, and that Plaintiff nonetheless timely made her payments. Although the SAC could have included more details describing these events, they are sufficient to provide time, place, and nature of the alleged fraud and therefore state this claim with sufficient particularity. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547-48.

The court rejects, however, that Plaintiff has stated a claim to the extent it is based on an assertion that Defendants foreclosed without proper title

and/or improperly reported negative information regarding Plaintiff to credit reporting agencies. *See* Doc. No. 49, SAC ¶ 81(h), (i). The SAC includes no allegations explaining the basis of these assertions. For example, the SAC fails to assert that BANA ever actually claimed that it owned the subject property -- rather, according to the SAC, it appears that BANA may have been the servicer only. The SAC further fails to include any factual allegations whatsoever explaining what information Defendants reported to the credit reporting agencies, when Defendants provided the information, why this information was false, and precisely how this information lowered her credit scores. Indeed, without such allegations, Plaintiff has failed to meet her obligations under Rule 12(b)(6), much less the more rigorous standards of Rule 9(b).

In sum, the court finds that Plaintiff has stated a claim against BANA based on its alleged failure to properly credit Plaintiff's account with her mortgage payments to wrongfully foreclose on the subject property and DENIES Defendants' Motion to Dismiss Count II of the SAC.

**C.     Unfair and Deceptive Acts or Practices (Count III)**

The Complaint asserts that Defendants engaged in the following unfair or deceptive acts or practices in violation of HRS § 480-2:

> a.     Attempting to enforce the debt and foreclosing on the Property without proper reason and after Rey had

been placed in a loan modification and forbearance agreement.

b.　　Failing to comply with an agreement to modify the terms of Rey's loans to affordable and sustainable levels in accordance with HAMP guidelines;

c.　　Failing to disclose the real party in interest in a timely manner that would have allowed Rey to know who the investor was and to see if the work out agreement would be honored without the necessity of engaging in litigation . . .

d.　　Failing to properly account for payments made by Rey;

e.　　Attempting to collect money from Rey in excess of the modified loan payments that had been agreed to;

f.　　Manufacturing or reverse engineering documents in order to facilitate a wrongful foreclosure in addition to predatory servicing practices[; and]

g.　　Failing to properly and timely respond to Rey's qualified written request in a timely manner as to avoid fees and costs associated with attempting to stop a foreclosure and obtain a loan modification or work out when neither Countrywide nor BOA ever intended to stop the foreclosure or allow Rey to work out satisfactory loan terms.

Doc. No. 49, SAC ¶ 95.

Defendants argue this claim appears to be based on fraud, yet Plaintiff has failed to plead such claim with particularity. *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010) (relying on *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009), to find that Chapter 480 claims that sound in fraud must be pled with particularity). As explained above, however, the court finds that Plaintiff has sufficiently alleged a fraud claim based on BANA's

alleged failure to properly credit Plaintiff's account with her mortgage payments to wrongfully foreclose on the subject property. To the extent Plaintiff bases this claim on these same allegations, Plaintiff has asserted a claim for violation of HRS § 480-2. *See, e.g.*, Doc. No. 49, SAC ¶¶ 95(a), (c), (d), (e).[3]

The court rejects, however, that Plaintiff has stated a claim to the extent it is based on an assertion that Defendants failed to honor an enforceable loan modification agreement between the parties. *See id.* ¶¶ 95(a), (e). As alleged in the SAC, although BANA indicated that Plaintiff may qualify for a loan modification, the parties never entered into an agreement beyond the six-month repayment plan. *See id.* ¶¶ 38-41 (outlining Plaintiff's attempts to obtain a loan modification). Further, to the extent Plaintiff asserts that Defendants breached the HAMP guidelines, "there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP." *Dodd v. Fed. Home Loan Mortg. Corp.*, 2011 WL 6370032, at *12 (E.D. Cal. Dec. 19, 2011) (collecting cases). Finally, to the extent Plaintiff bases this claim on Defendants' alleged RESPA violation, as explained above, Plaintiff has failed to state a cognizable RESPA violation and the conclusory allegation in this Count suffers from the same

---

[3] Defendants further argue that Plaintiff has failed to assert damages. The court disagrees -- the SAC asserts that Defendants' violations of HRS § 480-2 caused Plaintiff to lose the subject property and her investment therein. Doc. No. 49, SAC ¶ 95.

deficiencies.

The court therefore DENIES Defendants' Motion to Dismiss to the extent Plaintiff asserts that Defendants violated HRS § 480-2 based on BANA's alleged failure to properly credit Plaintiff's account with her mortgage payments to wrongfully foreclose on the subject property.

## D.    IIED  (Count IV)

Count IV asserts:

As a direct and proximate result of the wrongful acts and omissions of BOA as more specifically set forth in the [preceding] paragraphs of this Complaint, Plaintiff has suffered severe mental and emotional distress due to the BOA lying about the modification and failing to disclose the real investor in a timely manner that would have facilitated communication and the possibility of a work out without the necessity of having to incur fees and costs to enforce the modification agreement or obtain damages for BOA's wrongful acts and omissions in improperly and illegally attempting to get more money from Rey than owed through the modification and otherwise preventing any loss mitigation options from being considered and consummated.

Doc. No. 49, SAC ¶ 97.

Defendants argue that this allegation fails to plead outrageous conduct, a necessary element of an IIED claim.  The court disagrees.

To prove intentional infliction of emotional distress under Hawaii law, a plaintiff must prove four elements.

First, the plaintiff must prove that the conduct was either intentional or reckless.  Second, the conduct in question must have been "outrageous."  Next, the plaintiff must establish causation, and finally, there must be evidence that the plaintiff suffered extreme emotional distress.  A determination of "outrageous" conduct is fact specific.  Hawaii courts have defined outrageous conduct as conduct "without just cause or excuse and beyond all bounds of decency."  If the alleged conduct does not rise to the level of "outrageous," dismissal is proper.

*Enriquez v. Countrywide Home Loans, FSB*, --- F. Supp. 2d ----, 2011 WL 3861402, at *26 (D. Haw. Aug. 31, 2011) (citations and some quotation marks omitted).

Although it is true that "[d]efault and foreclosure proceedings generally do not rise to the level of extreme and outrageous conduct [because] [d]enying a loan modification which might result in foreclosure is no more 'outrageous in character' than actually foreclosing," *Doran v. Wells Fargo Bank*, 2011 WL 5239738, at *10-11 (D. Haw. Oct. 31, 2011) (quoting *Uy v. Wells Fargo Bank, N.A.*, 2011 WL 1235590, at *14 (D. Haw. Mar. 28, 2011), the allegations of the SAC do not simply assert that Plaintiff was denied a modification.  Rather, as explained above, the SAC asserts that BANA failed to properly account for Plaintiff's loan payments, told her that she would qualify for a modification and that foreclosure would not occur, hid from Plaintiff the true owner of the note and mortgage so that she could not seek a work-out arrangement, and wrongfully

foreclosed on the subject property.  As pled, these allegations support that BANA's conduct was outrageous.

The court therefore DENIES Defendants' Motion to Dismiss Count IV of the SAC.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS in part and DENIES In part Defendants' Motion to Dismiss.  Plaintiff's claims for fraud, violation of HRS Ch. 480, and IIED against BANA remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 26, 2012.



/s/ J. Michael Seabright
————————————————————
J. Michael Seabright
United States District Judge

*Rey v. Countrywide Home Loans, Inc., et al.*, Civ. No. 11-00142 JMS/KSC, Order Granting in Part and Denying in Part Defendants Countrywide Home Loans, Inc. and BAC Home Loans Servicing, LP's Motion to Dismiss Plaintiff's Second Amended Complaint